IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VICKI KAYE SMITH                                                                                          PLAINTIFF

        v.                              Civil No. 11-2141

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                    DEFENDANT

### MEMORANDUM OPINION

        Plaintiff, Vicki Smith, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

        The plaintiff filed her application for DIB on January 6, 2010, alleging an onset date of December 31, 2009, due to degenerative disk disease ("DDD") of the cervical and lumbar spine, fibromyalgia, obesity, anxiety, and depression. Tr. 117-120, 149-150, 154-162, 175-176, 205-210. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 46-47, 50-51. An administrative hearing was held on December 18, 2008. Tr. 757-793. Plaintiff was present and represented by counsel.

        At the time of the hearing, Plaintiff was 49 years old and possessed the equivalent of a high school education. Tr. 29. She had past relevant work ("PRW") experience in the clerical field, as well as cleaning medical equipment for a medical supply company owned and operated by her husband. Tr. 145-148, 151-152, 178-185.

        On March 15, 2011, the ALJ found Plaintiff's DDD, fibromyalgia, and obesity to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart

**AO72A**
**(Rev. 8/82)**

P, Regulation No. 4. Tr. 9-10. After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to

> lift and carry twenty pounds occasionally and ten pounds frequently, sit for about six hours during an eight-hour workday, and stand and walk for about six hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, stoop, balance, kneel, crouch, and crawl, but she cannot climb ladders, ropes, or scaffolds. The claimant can frequently handle and finger, and she can occasionally reach overhead.

Tr. 10. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a general office clerk, file clerk II, medical records clerk, and circulation clerk. Tr. 15-16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 18, 2011. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 10.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   Discussion:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on

all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence). The ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982).

Fibromyalgia is a condition that causes pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The disease is chronic, and "[d]iagnosis is usually made [only] after eliminating other conditions." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003). The principal symptoms are "pain all over," trauma, anxiety, fatigue, disturbed sleep, stiffness, irritable bowel symptoms, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely eighteen fixed locations on the body that when pressed firmly cause the patient who really has fibromyalgia to flinch. *See* THE MERCK MANUAL 1369-1371 (16th ed. 1992).

The medical evidence indicates that Plaintiff underwent cervical fusion in the 1980's, due to injuries sustained in a motor vehicle accident. Tr. 33, 264. This did not, however, resolve her problems. In 1996, Dr. James Deneke, a rheumatologist, diagnosed Plaintiff with DDD of the cervical spine by history, probable degenerative disease of the lumbar spine, and probable early osteoarthritis of the

AO72A
(Rev. 8/82)

thumb. Tr. 462. Significant back and neck pain continued and an MRI performed in 1997 showed narrowing and obliteration of the disc space at C5-6 level, consistent with anterior cervical fusion. Tr. 270-271. There also appeared to be a prominent osseous spur projecting posteriorly and impinging upon the spinal cord on the left side of the C5-6 vertebra and a broad left posterior lateral central protrusion, probably representing a herniated nucleus pulposus (herniated disk). The protrusion effaced the anterior subarachnoid space somewhat, and appeared to impinge upon the proximal neural foramen.

Plaintiff continued to experience back and neck pain and was diagnosed with DDD. Tr. 281, 282, 284, 285, 499. In addition to her subjective reports of generalized pain, in January 2010, Dr. C. Kent Wright noted paresthesias in her upper and lower extremities and tenderness to palpation in the cervical, thoracic, and lumbar spine. Tr. 398. Although nerve conduction studies were negative, MRI's of her lumbar and cervical spine revealed severe degenerative disc space narrowing at the C5-6 level; moderate degenerative disc space narrowing at C6-7 level; mild disc space narrowing at the C4-5 level; tiny central disk protrusions at the C2-3 and C3-4 levels; a small focal central disc protrusion with mild disc extrusion that effaced the ventral aspect of the thecal sac at the C4-5 level; a mild broad spondylitic ridging most pronounced posterior laterally on the left at the C5-6 level; a mild broad disc protrusion and dorsal spondylitic ridging without spinal canal stenosis at the C6-7 level; mild central disc protrusion at L5-S1 without canal stenosis; and, multilevel degenerative disc space and narrowing. Tr. 394-395. Dr. Wright continued to note paresthesias in her upper and lower extremities and diagnosed Plaintiff with paresthesias, lumbago, cervical DDD, and obesity. Tr. 392.

In May 2010, Plaintiff's complaints of multiple joint pain resulted in a referral back to rheumatologist Dr. Deneke. Although no range of motion limitations were evident, a physical exam revealed tenderness in the left lateral epicondyle, wrists, and proximal interphalangeal joints (" PIP") joints bilaterally. Tr. 407-414, 455-460, 465-468. Plaintiff also exhibited tenderness with light compression of the metacarpophalangeal ("MCP") joints on the right, slight effusion on the right knee

with tenderness, tender ankles, tenderness of the mid-dorsal spine lumbosacral junction, and some pain on motion with anterior flexion of her back. X-rays of her hands showed sharp spurring of the first carpometacarpal ("CMC") joints bilaterally and a little narrowing at the distal interphalangeal joint ("DIP") joints, compatible with a diagnosis of osteoarthritis. Dr. Deneke diagnosed Plaintiff with chronic fibromyalgia-type pain with underlying DDD of the spine and osteoarthritis. He prescribed a trial of Lyrica and a stretching and conditioning program, and ordered laboratory tests. Blood work ultimately ruled out inflammatory arthritis and connective tissue disease, leaving Plaintiff with diagnoses of DDD, fibromyalgia, and osteoarthritis. Tr. 405.

Records indicate that the Lyrica Dr. Deneke prescribed did appear to be helpful, however, Plaintiff required increasing doses of this medication. Tr. 401-403, 404, 453. Ultimately, she began to experience confusion, which was a noted side effect of this medication, resulting in its discontinuation. Tr. 447-449. The last medical records of evidence indicate that Dr. Deneke was weaning Plaintiff off of Lyrica with the intention of prescribing Savella or Cymbalta once the Lyrica had been totally discontinued. Tr. 447-449.

In September 2010, a physical RFC assessment was completed by Dr. Danny Silver. Tr. 416-420. Dr. Silver reviewed Plaintiff's medical records and examined her, diagnosing her with fibromyalgia, cervical DDD, DJD, migraine headaches, hypersomnia, and reactive airway disease. His examination noted limited palmar flexion in the wrists and PIP joints bilaterally, limited hip flexion and rotation, crepitus in both knees with swelling in the left knee, a decrease in grip strength, and a 50% decrease in her ability to walk on heel-toes. Dr. Silver concluded that Plaintiff could sit and stand for a total of three hours during an eight-hour workday, walk for a total of two hours during an eight-hour workday, and lift and carry no more than ten pounds. He also found she could not use her hands for repetitive actions such as pushing and pulling; could not squat, crawl, climb, crouch or kneel; should never be exposed to unprotected heights or being around moving machinery; could occasionally bend,

reach above head, stoop, and be exposed to marked temperature change, dust, fumes, gases, and noise. Further, Dr. Silver determined that Plaintiff would need to take unscheduled breaks during an eight hour work shift, would miss more than four days per month if employed, would need to elevate her feet periodically during the day, and would need a sit/stand/walk option at will.

In September 2010, Plaintiff reportedly fell in a parking lot, injuring her knee. Tr. 471-473. X-rays showed normal alignment with no evidence of fracture and no effusion. However, she continued to exhibit pain with weight bearing and flexion. Tr. 447-449, 475. An MRI conducted in December 2010 revealed diffuse abnormal signal in the area of the posterior cruciate ligament ("PCL") compatible with a PCL tear. Tr. 506. Moderate knee joint effusion and increased signal in the posterior horn of the medial meniscus were also evident, found to be compatible with degenerative signal changes.

In November 2010, Dr. Deneke completed a medical source statement indicating that Plaintiff would need to take unscheduled breaks during an eight hour work shift, would miss about four days per month if employed, and would need a sit/stand/walk option at will. Tr. 422. He also indicated that he did not expect a fundamental or marked change for the better in her future.

The ALJ considered the opinions of both Drs. Deneke and Silver, but dismissed them stating that they were inconsistent with the medical evidence of record. He went on to state that objective testing had revealed only mild degenerative changes in Plaintiff's cervical and lumbar spine with mild osteoarthritis in her hands and wrists. The ALJ also relied upon the evidence indicating that Plaintiff's condition responded well to Lyrica, ignoring the fact that she had to be tapered off of this medication due to side effects, to conclude that her impairments responded well to medication. A review of the evidence, however, reveals that Plaintiff's spinal findings were much more severe than the ALJ was willing to acknowledge. And, at the time of his decision, Plaintiff was being tapered off of the only medication that had seemed to help her condition. Therefore, after reviewing the entire record in this case, the undersigned finds that substantial evidence neither supports the ALJ's dismissal of the

7

assessments of Drs. Deneke and Silver, nor supports the ALJ's RFC determination. The most recent objective testing suggests that Plaintiff has more significant limitations with regard to her ability to stand, walk, climb, stoop, balance, crouch, kneel, and crawl. She might also require a sit/stand option.

On remand, the ALJ is directed to reconsider the RFC assessments of Drs. Deneke and Silver and to reevaluate the evidence identifying Plaintiff's physical limitations. As Dr. Deneke's assessment does not indicate Plaintiff's postural limitations, the ALJ should also contact Dr. Deneke, asking him to review Plaintiff's medical records; to complete a physical RFC assessment regarding Plaintiff's physical capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The ALJ is reminded that a treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). Likewise, the opinion of a specialist is generally entitled to greater weight when concerning medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). Additionally, in the context of fibromyalgia cases, the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity. *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998).

AO72A
(Rev. 8/82)

V.  **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of August 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)